### PETER J. MAYOCK v. RONALD H. KETTLE

COURT OF COMMON PLEAS   NEW LONDON COUNTY   FILE No. 12432

Memorandum filed July 19, 1951.

*Peter J. Mayock,* pro se.

*George C. Conway,* Attorney General, and *Ernest H. Halstedt,* Assistant Attorney General, for the Defendant.

DWYER, J.  The plaintiff has been confined in the Norwich state hospital for several years under a commitment of the Probate Court for the district of Norwich. Acting on his own behalf, he filed a petition here for a writ of habeas corpus, alleging that he is being illegally confined, as the commitment was "basically due to having followed the dictates of his conscience

in performing a religious 'Act of Faith' that is authorized and supported by the divinely inspired Word of God. The certainty of the interpretation of the particular passage resting upon the self evident axiomatic proposition of the passage, together with the personal experience and investigation of the petitioner." Further, he alleges that his "Constitutional rights of freedom of conscience and religious liberties have been violated and he is being unlawfully and wrongfully confined for practicing his faith." The defendant filed a return setting forth the order of the Probate Court as authority for the confinement.

At the hearing, it was shown that, in obedience to "revelations" which came to him and in accordance with his own literal interpretation of a verse found in the Bible, the plaintiff removed two members of his body, thus permanently and partially incapacitating himself. He justifies these acts as follows: "The necessity of following the literal interpretation became apparent when it was understood a Spiritual sacrifice was necessary in order to conform to God's Will. The member was not offensive in itself, but to refuse to remove it as a material oblation to God would make it offensive." Again, he states: "When the insight first came to me that I was to offer a spiritual sacrifice as a token of my faith in the revelation, I realized the meaning of the passage' referring to the removal of one's right eye . . . as a Peace offering." Also, he states: "This second phase of the Peace offering (the vow offering) I accomplished when I removed my right hand through faith that it was God's Will and that he would justify my faith through revelation to others."

The plaintiff readily admits that his interpretation of the particular Bible passage is not generally accepted by established churches or by any large group of people. Actually, tested by the tenets of other forms of Christian religion, his attitude appears to be a heresy. This does not militate against him in this proceeding, for constitutional guarantees are not restricted to orthodox religious practices. *Follett* v. *McCormick*, 321 U. S. 573.

The constitution of Connecticut, Article first, § 3, provides: "The exercise and enjoyment of religious profession and worship, without discrimination, shall forever be free to all persons in this state; provided, that the right hereby declared and established shall not be so construed . . . [as] to justify practices inconsistent with the peace and safety of the state." Thus it will

be observed that the right of religious freedom is limited by the concluding clause of the section. Freedom of conscience and freedom to adhere to any form of religious worship is guaranteed, but the exercise thereof must be in conformity with the peace and order of society.

Likewise, under the first amendment of the constitution of the United States, read in the light of the fourteenth amendment, the free exercise of religious freedom embraces two concepts—freedom to believe and freedom to act. "The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." *Cantwell* v. *Connecticut,* 310 U. S. 296, 313; *Davis* v. *Beason,* 133 U. S. 333. The constitutional guarantee of religious freedom did not prohibit legislation in respect to polygamy. *Reynolds* v. *United States,* 98 U. S. 145.

The finding of the Probate Court that the plaintiff was mentally ill still stands. This condition has been manifested by his "Acts of Faith" mentioned above and by his almost constant Bible study and discussion. While his general deportment is good, the over emphasis on religion suggests a lack of balance which appears in many cases of mental illnesses.

Up to the present, the plaintiff has not evidenced any disposition to harm others; but he admits that if another revelation comes to him which would dictate that he should further maim or disfigure himself as an oblation to God, he would obey it. Thus, it becomes necessary to protect him as a member of society —to protect him from himself. So, while he may worship his Creator by any belief he chooses, his acts and actions must be controlled in accordance with the constitutional mandates. It would not be consistent with the public good to allow any person to harm himself, even under the guise of a religious practice.

The writ is dismissed.